JS 44 CAND (Rev. 12/11)

*(handwritten top right)* 3:12-CV-805-MEJ ADR ECF

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
HIGH TEK USA, INC.

### DEFENDANTS
HEAT AND CONTROL, INC.

**(b)** County of Residence of First Listed Plaintiff    Sacramento
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Alameda
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Downey Brand LLP
621 Capitol Mall, 18th Floor
Sacramento, CA  95814

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff,*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Med. Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☒ 410 Antitrust *(circled, handwritten 10)*
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition)
- ☐ 465 Other Immigration Actions

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multi district Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
15 USC §1, 15 USC § 2, 15 USC § 13 and pendent state law claims
Brief description of cause:
Monopoly/Antitrust

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 75,000.00 *(in excess of)*
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
*(Place an "X" in One Box Only)*
- ☒ SAN FRANCISCO/OAKLAND
- ☐ SAN JOSE
- ☐ EUREKA

DATE  2/17/12    SIGNATURE OF ATTORNEY OF RECORD  Shaye Harrington

JS 44 CAND (Rev. 12/11)

Martin Dean's Essential Forms™

CIVIL COVER SHEET



1  DOWNEY BRAND LLP
   JENNIFER RANDLETT MADDEN (Bar No. 184905)
2  SHAYE HARRINGTON (Bar No. 238354)
   621 Capitol Mall, 18th Floor
3  Sacramento, CA 95814-4731
   Telephone: (916) 444-1000
4  Facsimile: (916) 444-2100
   jmadden@downeybrand.com
5  sharrington@downeybrand.com

6  Attorneys for Plaintiff
   HIGH TEK USA, INC.
7

8            UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10  HIGH TEK USA, INC., a California        Case No.   **C12-00805** ME
    corporation,
11                                          **COMPLAINT FOR DAMAGES AND**
                                            **INJUNCTIVE RELIEF; DEMAND FOR**
12             Plaintiff,                   **JURY TRIAL**

13  v.

14  HEAT AND CONTROL, INC., a
    California corporation, and DOES 1-10,
15  inclusive,

16             Defendants.

17

18       Plaintiff HIGH TEK USA, INC. ("HIGH TEK"), by and through its attorneys and for its

19  Complaint against Defendant HEAT AND CONTROL, INC. ("H&C"), alleges as follows:

20                        **I.    THE PARTIES**

21       1.    HIGH TEK is a Louisiana corporation duly authorized to conduct business in the

22  State of California. HIGH TEK's principal place of business is in Kenner, Louisiana.

23       2.    HIGH TEK is informed and believes and on that basis alleges that H&C is a

24  California corporation duly authorized to conduct business in the State of California with its

25  principal place of business in Hayward, California.

26       3.    HIGH TEK is ignorant of the true names and capacities of defendants sued herein

27  as DOES 1-10, inclusive, and therefore sues these defendants by fictitious names. HIGH TEK

28  will amend this Complaint to add their true names and capacities when ascertained. HIGH TEK

1212084.2                                1

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

DOWNEY BRAND LLP

1   is informed and believes, and on that basis alleges, that each of these fictitiously named

2   defendants is responsible in some manner for the acts or omissions alleged in this Complaint and

3   that HIGH TEK's injuries were proximately caused by the acts or omissions of these defendants.

4       4.      HIGH TEK is informed and believes and thereon alleges that, at all times herein

5   mentioned, each of the defendants was the agent and/or employee of each of the remaining

6   defendants and, in doing the things hereinafter alleged, was acting in the course and scope of such

7   agency and/or employment.

8   ## II.    JURISDICTION

9       5.      Subject matter jurisdiction in this Court is proper under 28 U.S.C. § 1331 (original

10  jurisdiction over federal questions) and 28 U.S.C. § 1337 (original jurisdiction over laws

11  regulating commerce or protecting trade and commerce against restraints and monopolies).

12  Supplemental jurisdiction over the state law claims is proper in this Court under 28 U.S.C. §

13  1367. Subject matter jurisdiction in this Court is also proper under 28 U.S.C. § 1332. HIGH

14  TEK is a corporation organized and existing under the laws of the State of Louisiana, duly

15  authorized to conduct business in the State of California. HIGH TEK's principal place of

16  business is in Kenner, Louisiana. HIGH TEK is informed and believes and on that basis alleges

17  that H&C is a corporation organized and existing under the laws of the State of California with its

18  principal place of business in Hayward, California. The amount in controversy exceeds the sum

19  or value of $75,000.

20      6.      Personal jurisdiction is this Court is proper because H&C is domiciled in the State

21  of California and/or has sufficient minimum contacts with the State of California to confer

22  jurisdiction upon this Court such that the maintenance of this suit does not offend traditional

23  notions of fair play and substantial justice.

24  ## III.    VENUE

25      7.      Venue in this Court is proper under 28 U.S.C. § 1391 in that H&C is a corporation

26  organized and existing under the laws of the State of California with its principal place of

27  business in Hayward, California.

28

DOWNEY BRAND LLP

1212084.2

2

IV.   **FACTUAL BACKGROUND**

8.   H&C manufactures food processing and packaging equipment systems.  It is the exclusive North America distributor of scales, equipment and parts manufactured by Ishida Co., Ltd. ("Ishida").  H&C distributes Ishida parts in California and throughout the United States in interstate commerce.

9.   In 2004, O'Jayland Brown ("Mr. Brown") and Jason Sigman ("Mr. Sigman") started their own service-based company, which is now known as HIGH TEK.  Initially, HIGH TEK serviced food processing and packaging equipment systems — including those manufactured by Ishida — that had been purchased from other companies such as H&C.

10.   Over the years, HIGH TEK's service business flourished.   Word of mouth regarding HIGH TEK's superior services spread throughout the packaging industry on the west coast and began steadily spreading eastward, allowing HIGH TEK to provide services in various states throughout the country.  It soon became apparent that the food processing and packaging industry lacked a key item: quality refurbished/reconditioned equipment at a great price with excellent support. Mr. Brown and Mr. Sigman recognized this need and, as a result, HIGH TEK added to its business model.

11.   With the addition, HIGH TEK not only provides valuable services to its customers, it also sells used scales that it refurbishes and reconditions to factory standards.  Sales are made throughout the country in interstate commerce.  HIGH TEK continues to service the scales for existing and new customers.  With this new addition to HIGH TEK's business, HIGH TEK believes H&C began to view HIGH TEK as competition for its sales business and, on information and belief, hoped to eliminate that competition.

12.   In refurbishing/reconditioning and servicing scales, HIGH TEK deals exclusively with Ishida scales.  In order to refurbish and recondition the scales and service them during continued use by HIGH TEK's customers, HIGH TEK must purchase Ishida parts from the exclusive North America distributor: H&C.

13.   Initially, for reasons that are only known to H&C but appear to be tied to a desire to eliminate competition, H&C refused to provide HIGH TEK with a parts account and thereby

DOWNEY BRAND LLP

1   prohibited HIGH TEK from purchasing Ishida parts in North America. As a result, HIGH TEK

2   was forced to purchase parts from H&C through a different company, Conseco Food Group Inc.

3   When H&C learned that HIGH TEK was purchasing parts through Conseco Food Group Inc., it

4   insisted that such third-party transaction cease.

5        14.    Then, in or about 2007, Jim Tate ("Mr. Tate"), an H&C Service Manager and

6   Mr. Brown and Mr. Sigman's old supervisor, told HIGH TEK that H&C would give the

7   Company a parts account if HIGH TEK made changes to its catalog. Mr. Tate was an agent of

8   H&C. Specifically, although the catalog never referenced H&C, it described HIGH TEK as being

9   the best in the industry. Mr. Tate asserted that, in order for HIGH TEK to obtain a long-term

10  parts account, H&C insisted that language be removed. In February 2007, in what proved to be

11  detrimental reliance upon H&C's promise of a long-term parts account, HIGH TEK made the

12  requested changes to its catalog. HIGH TEK sent a copy of these changes to Mr. Tate in order to

13  initiate the process of obtaining a long-term parts account.

14       15.    Thereafter, H&C temporarily provided HIGH TEK with a parts account to

15  purchase Ishida parts. At first, H&C set up the account as collect on delivery ("COD"). Over

16  time, HIGH TEK obtained a line of credit for the parts. Even with the line of credit, though,

17  H&C required HIGH TEK to pay a 10-20% markup on all Ishida parts — something other

18  companies who were not in direct competition with H&C were not required to pay. Although

19  upset by the increased price, HIGH TEK had no other options when it came to purchasing Ishida

20  parts and, therefore, regularly paid the inflated invoices issued by H&C.

21       16.    During the course of the next few years, HIGH TEK's success soared and the

22  Company soon became a major competitor of H&C. Almost immediately after H&C and HIGH

23  TEK held tables near one another at the PMMI Pack Expo food processing and packaging trade

24  show in Las Vegas, Nevada, and after all outstanding invoices were paid by HIGH TEK

25  (including those not yet due), H&C changed HIGH TEK's parts account back to COD.

26  Approximately three days later, on December 20, 2011, H&C eliminated HIGH TEK's parts

27  account entirely without explanation. According to H&C's Chief Financial Officer, George Lotti,

28  H&C would "no longer be accepting any future orders from [HIGH TEK]."

1212084.2
4

DOWNEY BRAND LLP

17.     Because H&C is the exclusive North America distributor of Ishida scale equipment, including all parts, H&C's actions meant that HIGH TEK could no longer purchase Ishida parts in North America.   HIGH TEK has attempted to purchase parts from Ishida distributors outside of North America, e.g., in Europe.   Initially, the European distributor provided HIGH TEK with an application to purchase parts.   However, after the European distributor spoke with H&C, it informed HIGH TEK that it could not sell parts to the Company because H&C is the only company that can sell Ishida parts in the United States.   Specifically, the European distributor stated that it could not supply parts to HIGH TEK "[w]ith the current agreements in place with [H&C]" and that HIGH TEK would need to contact H&C for all parts needs in North America.   When HIGH TEK followed up and explained that H&C refused to sell Ishida parts to the Company, the European distributor stated: "H&C is the exclusive distributor for North America, and therefore all parts (and machine) purchases must go through [H&C]."

18.     HIGH TEK then contacted Ishida to try to purchase parts directly from the manufacturer, but was again told that parts could only be purchased in North America from H&C.

19.     HIGH TEK has attempted to purchase Ishida parts through third-party companies who initially purchased parts from H&C.   However, H&C has halted any such transactions and, upon information and belief, has threatened and/or coerced the third-party companies such that they fear losing their parts accounts with H&C if they resell parts to HIGH TEK.

20.     HIGH TEK's inability to purchase Ishida parts has halted the Company's ability to conduct business.   HIGH TEK currently has contracts with its customers that require it to obtain Ishida parts.   Those contracts must be fulfilled.   H&C's actions prohibit HIGH TEK from fulfilling its obligations under those contracts because there is no other alternative to purchase Ishida parts.   HIGH TEK has been forced to breach its contracts and turn away business as a result of H&C's refusal to sell Ishida parts.

21.     HIGH TEK has attempted to meet and confer with H&C regarding H&C's sudden, complete and unjustified refusal to sell Ishida parts to HIGH TEK.   H&C responded by stating it "has determined to whom it will sell product, and on what terms."   Although it stated that it "decided not to deal with [HIGH TEK] for valid and legitimate business reasons," H&C failed

12120842                                         5

DOWNEY BRAND LLP

1  and refused to identify those alleged reasons. H&C concluded its response by stating the

2  following:

> H&C will not reinstate [HIGH TEK's] parts account. H&C is fully
> within its legal rights in choosing not to deal with [HIGH TEK],
> and [HIGH TEK's] meritless legal threats will not cause H&C to
> change its decision. If [HIGH TEK] nevertheless decides to file
> suit, H&C will meet that action with a vigorous defense and all
> other available legal responses, including possible counterclaims.

7  22.    The actions of H&C as alleged above were done with malice, fraud and oppression

8  and in reckless disregard of the rights of HIGH TEK, entitling HIGH TEK to an award of

9  punitive damages.

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1)

13  23.    HIGH TEK repeats and realleges the allegations contained in paragraphs 1 through

14  22, inclusive, of this Complaint and by reference thereto incorporates the same herein as though

15  set forth in full.

16  24.    H&C has contracts with Ishida to be the exclusive distributor of Ishida parts in

17  North America. H&C also has contracts with companies to which it sells Ishida parts.

18  25.    H&C's contracts with Ishida and the way it executes those contracts in North

19  America unreasonably restrains trade under both a per se rule of illegality and a rule of reason

20  analysis. Likewise, H&C's threats to/coercion of and refusal to sell Ishida parts to companies that

21  agree to resell them to HIGH TEK unreasonably restrains trade.

22  26.    The restraint on trade has affected interstate commerce and competition as a

23  whole. H&C and HIGH TEK both have contracts with customers throughout the United States.

24  H&C's conduct has eliminated competition in those locations and prohibited HIGH TEK from

25  performing its contracts in those locations.

26  27.    As a result of H&C's conduct, HIGH TEK has been and continues to be harmed in

27  an amount to be determined at trial, but in no event less than $75,000.

28  WHEREFORE, HIGH TEK seeks judgment against H&C as provided below.

DOWNEY BRAND LLP

1212084.2

6

1

## SECOND CLAIM FOR RELIEF

2

### (Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2)

3     28.     HIGH TEK repeats and realleges the allegations contained in paragraphs 1 through

4    27, inclusive, of this Complaint and by reference thereto incorporates the same herein as though

5    set forth in full.

6     29.     There is a relevant market for the purchase of Ishida parts in California and

7    throughout North America.

8     30.     H&C possesses monopoly power in the relevant market for the purchase of Ishida

9    parts in California and throughout North America.  That market is characterized by significant

10   entry barriers.

11     31.     H&C has willfully and wrongfully maintained and abused its monopoly power in

12   the relevant market for the purchase of Ishida parts through anticompetitive and exclusionary

13   behavior directed at HIGH TEK, including anticompetitive behavior designed to prevent HIGH

14   TEK from engaging in its business and serving as an alternative platform that threatened and

15   continues to threaten H&C's monopoly power in the Ishida parts market.

16     32.     The foregoing acts and practices have harmed consumers and competition.

17     33.     H&C's anticompetitive and exclusionary conduct has directly and proximately

18   caused injury to HIGH TEK's business and contracts with its customers, as set forth above.

19   HIGH TEK's injury is of the type the antitrust laws are intended to prohibit and thus constitutes

20   antitrust injury.  Unless the activities complained of are enjoined, HIGH TEK also will continue

21   to suffer injury for which HIGH TEK is without an adequate remedy at law.

22     WHEREFORE, HIGH TEK seeks judgment against H&C as provided below.

23

### THIRD CLAIM FOR RELIEF

24

### (Violation of the Robinson-Patman Act, 15 U.S.C. § 13.)

25     34.     HIGH TEK repeats and realleges the allegations contained in paragraphs 1 through

26   33, inclusive, of this Complaint and by reference thereto incorporates the same herein as though

27   set forth in full.

28

DOWNEY BRAND LLP

1212084.2

7

1    35.    H&C engaged in contemporaneous sales of commodities, namely Ishida scales,

2  equipment and parts, to various customers.  The grade and quality of these parts were the same

3  for all customers.

4    36.    For the brief period of time that H&C sold Ishida parts to HIGH TEK, it engaged

5  in price discrimination.  Specifically, H&C required HIGH TEK to pay a 10-20% markup on all

6  Ishida parts — something other customers who were not in direct competition with H&C were

7  not required to pay.  Although upset by the increased price, HIGH TEK had no other options

8  when it came to purchasing Ishida parts and, therefore, regularly paid the inflated invoices issued

9  by H&C.

10    37.    Both H&C and HIGH TEK engage in interstate commerce and H&C's action

11  significantly impacted business conducted in and across various states.

12    38.    As a result of H&C's conduct, HIGH TEK has been and continues to be harmed in

13  an amount to be determined at trial, but in no event less than $75,000.

14    WHEREFORE, HIGH TEK seeks judgment against H&C as provided below.

15    **FOURTH CLAIM FOR RELIEF**

16    **(Intentional Interference with Contractual Relations)**

17    39.    HIGH TEK repeats and realleges the allegations contained in paragraphs 1 through

18  38, inclusive, of this Complaint and by reference thereto incorporates the same herein as though

19  set forth in full.

20    40.    Prior to H&C's decision to cease sales of Ishida parts to HIGH TEK, HIGH TEK

21  entered  into  agreements  with  several  customers  whereby  HIGH  TEK  would  sell

22  refurbished/reconditioned scales and, in some instances, further service those scales as needed.

23  Pursuant to these contracts, HIGH TEK was required to purchase Ishida parts and could only do

24  so from H&C.

25    41.    H&C knew of the existing contracts HIGH TEK had with its customers.  H&C

26  further knew that HIGH TEK needed to purchase Ishida parts from H&C in order to perform

27  under these contracts.

28

DOWNEY BRAND LLP

1212084.2

8

1    42.    HIGH TEK intended to disrupt and did disrupt the performance of the existing

2    contracts HIGH TEK had with its customers.  After conditioning such an arrangement on HIGH

3    TEK first agreeing to remove any competitive language from its catalog, H&C initially provided

4    HIGH TEK with a parts account for Ishida parts.  However, as HIGH TEK's business grew, the

5    competition apparently impacted H&C's business.  As a result, H&C immediately and suddenly

6    refused to sell parts to HIGH TEK for the purpose of forcing HIGH TEK to breach its contracts

7    with its current customers.  HIGH TEK has attempted to meet and confer with H&C in order to

8    obtain these parts and complete the work for its customers, and has expressed these efforts to

9    H&C, but H&C nevertheless refuses to sell Ishida parts to HIGH TEK in full awareness that its

10    decision will force HIGH TEK to breach its existing contracts.

11    43.    H&C's conduct prevented performance of HIGH TEK's contracts with its

12    customers and made performance more expensive and difficult.  To date, HIGH TEK has been

13    unable to perform its contracts for at least 20 customers.

14    44.    HIGH TEK has been, and will continue to be, harmed by H&C's conduct in an

15    amount to be determined at trial, but in no event less than $75,000.

16    45.    HIGH TEK has been unable to perform its contracts for at least 20 customers.

17    Some contracts are expected to generate additional business in the future.  HIGH TEK believes,

18    and on that basis alleges, that H&C has continued to interfere with HIGH TEK's existing

19    contracts.  Therefore, the total extent of lost contracts is currently unknown.

20    46.    H&C's conduct was a substantial factor in causing HIGH TEK harm.

21    WHEREFORE, HIGH TEK seeks judgment against H&C as provided below.

22                        **FIFTH CLAIM FOR RELIEF**

23              **(Intentional Interference with Prospective Economic Advantage)**

24    47.    HIGH TEK repeats and realleges the allegations contained in paragraphs 1 through

25    46, inclusive, of this Complaint and by reference thereto incorporates the same herein as though

26    set forth in full.

27    48.    Prior to H&C's decision to cease sales of Ishida parts to HIGH TEK, HIGH TEK

28    entered   into   agreements   with   several   customers   whereby   HIGH   TEK   would   sell

1212084.2                                              9

DOWNEY BRAND LLP

1    refurbished/reconditioned scales and, in some instances, further service those scales as needed.

2    Pursuant to these contracts, HIGH TEK was required to purchase Ishida parts and could only do

3    so from H&C.  In many cases, as is the standard in the industry, relationships between HIGH

4    TEK and its customers continued for several different pieces of equipment.  As a result, these

5    contracts were reasonably certain to produce future economic benefits to HIGH TEK including,

6    but not limited to, additional contracts for subsequent years.

7         49.    H&C knew of the existing relationships HIGH TEK had with its customers and

8    prospective customers.  As a competitor, H&C is fully aware of the nature of HIGH TEK's

9    business and understood that business relationships often extend for several years.  H&C further

10   knew that HIGH TEK needed to purchase Ishida parts from H&C in order to perform under these

11   contracts.

12        50.    HIGH TEK intended to disrupt and did disrupt the performance of the existing

13   relationships HIGH TEK had with its customers and prospective customers.  After conditioning

14   such an arrangement on HIGH TEK first agreeing to remove any competitive language from its

15   catalog, H&C initially provided HIGH TEK with a parts account for Ishida parts.  However, as

16   HIGH TEK's business grew, so too did its potential to compete with H&C.  As a result, H&C

17   immediately and suddenly refused to sell parts to HIGH TEK for the purpose of impacting HIGH

18   TEK's relationships with its current and prospective customers.  HIGH TEK has attempted to

19   meet and confer with H&C in order to obtain these parts and complete the work for its customers,

20   and has expressed these efforts to H&C, but H&C nevertheless refuses to sell Ishida parts to

21   HIGH TEK in full awareness that its decision will impact HIGH TEK's relationships with its

22   current and prospective customers.

23        51.    H&C intentionally committed wrongful acts designed to interfere with or disrupt

24   the relationship between HIGH TEK and its current and prospective customers.  H&C has made

25   misrepresentations to HIGH TEK regarding long-term parts agreements in exchange for changes

26   to HIGH TEK's catalog and, upon information and belief, has made misrepresentations to other

27   companies and distributors regarding HIGH TEK.  Further, H&C has engaged in a continued

28   course of anticompetitive conduct in violation of the Sherman Act, among other laws.

DOWNEY BRAND LLP

52.     H&C's wrongful acts have caused and will cause disruption of the relationships independently.

53.     HIGH TEK has been, and will continue to be, harmed by H&C's conduct in an amount to be determined at trial, but in no event less than $75,000.

54.     Already, HIGH TEK has been unable to perform its contracts for at least 20 current customers.  Some contracts are expected to generate additional business in the future. Without Ishida parts from H&C, HIGH TEK will be unable to provide refurbished/reconditioned scales to current or prospective customers.  HIGH TEK believes, and on that basis alleges, that H&C has continued to interfere with HIGH TEK's relationships.  Therefore, the total extent of lost relationships is currently unknown.

55.     H&C's conduct was a substantial factor in causing HIGH TEK harm.

56.     The actions of H&C as alleged above were done with malice, fraud and oppression and in reckless disregard of the rights of HIGH TEK, entitling HIGH TEK to an award of punitive damages.

WHEREFORE, HIGH TEK seeks judgment against H&C as provided below.

### SIXTH CLAIM FOR RELIEF

### (Promissory Estoppel)

57.     HIGH TEK repeats and realleges the allegations contained in paragraphs 1 through 56, inclusive, of this Complaint and by reference thereto incorporates the same herein as though set forth in full.

58.     Initially, for reasons that are only known to H&C but appear to be tied to increased competitive pressure asserted against it by HIGH TEK, H&C refused to provide HIGH TEK with a parts account and thereby prohibited HIGH TEK from purchasing Ishida parts.

59.     Then, in or about 2007, H&C promised to give HIGH TEK a parts account if HIGH TEK agreed to make changes to its catalog.  Specifically, although the catalog never referenced H&C, it described HIGH TEK as being the best in the industry.  H&C's agent asserted that, in order for HIGH TEK to obtain a parts account, H&C insisted that language be removed.

DOWNEY BRAND LLP

60. In making this agreement, H&C knew or should have known that HIGH TEK would be reasonably induced to rely on H&C's promise by changing its catalog.

61. In February 2007, in detrimental reliance upon H&C's promise of a long-term parts account, HIGH TEK made the requested changes to its catalog.

62. H&C initially and temporary provided HIGH TEK with a parts account but, thereafter, suddenly and completely eliminated HIGH TEK's parts account without justification.

63. As a result of H&C's conduct, HIGH TEK has been and continues to be harmed in an amount to be determined at trial, but in no event less than $75,000.

64. Injustice can be avoided only by enforcing H&C's promise completely.

WHEREFORE, HIGH TEK seeks judgment against H&C as provided below.

## SEVENTH CLAIM FOR RELIEF

### (Violation of Cal. Business and Professions Code § 17200 *et seq.*)

65. HIGH TEK repeats and realleges the allegations contained in paragraphs 1 through 64, inclusive, of this Complaint and by reference thereto incorporates the same herein as though set forth in full.

66. H&C engaged in unfair competition as defined by California Business and Professions Code section 17200, *et seq.*, in that H&C used unfair, unlawful and fraudulent business practices, including but not limited to violation of the Sherman Act, interference with contracts and prospective economic advantage, and promissory estoppel, in the manner or manners described herein.

67. As a direct and proximate result of the willful actions, conduct, and practices of H&C alleged above, HIGH TEK has been damaged and will continue to be irreparably harmed.

68. The foregoing conduct constitutes transgressions of a continuing nature for which HIGH TEK has no adequate remedy at law.

WHEREFORE, HIGH TEK seeks judgment against H&C as provided below.

## VI. PRAYER FOR RELIEF

Wherefore, HIGH TEK prays for the following:

1. Judgment in HIGH TEK's favor and against H&C;

DOWNEY BRAND LLP

2.     For compensation in an amount according to proof at trial including, but not limited to, actual damages and treble damages where appropriate;

3.     For appropriate equitable relief, including a permanent injunction enjoining H&C from causing further antitrust injury to HIGH TEK and from conducting unlawful, unfair, and fraudulent business practices as alleged in this Complaint and to restore competition lost in the relevant market for Ishida parts in California and throughout North America including, but not limited, to restoration of HIGH TEK's Ishida parts account with H&C;

3.     For restitution of amounts H&C has wrongfully obtained as a result of their unlawful, unfair, and fraudulent business practices;

4.     For exemplary and punitive damages in an amount to be determined at trial;

5.     For attorneys' fees as authorized by law;

6.     For costs of suit;

7.     For such other and further relief as the Court deems just and proper.

## VII.    DEMAND FOR JURY TRIAL

HIGH TEK hereby demands a jury trial. Fed. R. Civ. P. 38.

DATED: February 17 2012                    DOWNEY BRAND LLP


By:_____
            SHAYE HARRINGTON
            Attorney for Plaintiff
            HIGH TEK USA, INC.

DOWNEY BRAND LLP